## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSEPH MCELROY,

                                    *Plaintiff,*                 Civil Action No.

v.                                                          3:02 CV 1525 (AVC)

CITY OF TORRINGTON, ET AL

                                    *Defendant*s.             JANUARY 16, 2004

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56 and D.Conn.L.R. 56, the defendants, JAYE GIAMPAOLO and JOHN B. FIELD, JR., submit the following Memorandum of Law in support of their Motion for Summary Judgment dated January 16, 2004. References to exhibits within this document refer to the exhibits attached to the defendants Local Rule 56 Statement dated January 16, 2004 of material facts not in dispute.

## I.    STATEMENT OF FACTS.

By way of complaint dated August 20, 2002, the plaintiff, Joseph McElroy, commenced an action against the City of Torrington (the "City"), the individual members of the Board of Public Safety (the "Board"),[1] Jaye Giampaolo ("Giampaolo") and John B. Field, Jr. ("Field"). At all relevant times, Giampaolo and Field were the Acting Deputy Fire Chief and the Chief of the Torrington Fire Department, respectively. The members of the Board of Public Safety, Giampaolo and Field are all sued in their individual capacities, only. Exhibit B, McElroy Complaint, ¶4. The present Motion for Summary Judgment is addressed to the claims alleged against Giampaolo and Field, only.

---

[1] The individual members are James Potter, Carolann Kennedy, Thomas Telman, Robert Zordan, Kenneth Fuchsman, and Christopher Janco. *See* Exhibit F, Hayes Complaint, ¶4.

**ORAL ARGUMENT REQUESTED**

The present lawsuit, when reduced to its most basic form, is nothing more than the claim that because the plaintiff McElroy scored highest on the promotional exam for the rank of Captain in 2001, he should have been promoted to that rank. In an effort to elevate a trivial workplace dispute comprehensively covered by a collective bargaining agreement in to a conflict involving constitutional rights, McElroy seeks due process to uncover the reasons that he was not promoted and claims that past practices and mutual understandings entitled him, for merely scoring highest on the exam, to the promotion to the rank of Captain under the equal protection of the laws. McElroy's claims are unwarranted, unfounded, unreasonable and contrary to the clearly established law of this District and this Circuit.

The defendants incorporate by reference their Local Rule 56 Statement of material facts not in dispute as if fully set forth herein. The defendants' Local Rule 56 Statement includes all of the undisputed material facts supported by admissible evidence to dispose of the present case as well as the lawsuit captioned Hayes v. City of Torrington, 3:02 CV 1542 (MRK). For the reasons discussed throughout this Memorandum, these cases operate to plead each other out of any claim based on the Equal Protection Clause of the Fourteenth Amendment.

## A.    EVENTS GIVING RISE TO SUIT.[2]

In an otherwise ordinary workplace event, two vacancies occurred in the City of Torrington Fire Department. Two positions for the rank of Captain became open because of the promotion of one officer and the retirement of another. The vacancies were duly posted and announced. Several members of the department, all holding the rank of Lieutenant, expressed interest in the positions. As required by the governing

---

[2] The present discussion applies equally to two lawsuits: (1) the present lawsuit filed by Joseph McElroy, and (2) the lawsuit filed by Kevin Hayes now pending before Senior United States Court Judge Mark R., Kravitz. That lawsuit, Hayes v. City of Torrington, 3:02 CV 1542 (AVC), is discussed at length in this memorandum because it arises from the same factual pattern and the same transaction or occurrence. The events and circumstances of that lawsuit are established here and within the defendants' Local Rule 56 statement so that this Court need not take judicial notice of the contents of that lawsuit and the events therein. The defendants submit, however, that this Court is both empowered to and capable of taking judicial notice of the issues and facts of the Hayes lawsuit.

Collective Bargaining Agreement ("CBA"),[3] written and oral examinations were administered. Examinations were scored and scores were tallied, including additional points for seniority. At each stage, the scores were publicly posted and the ranking of those taking the test were revealed.

Following all of the examinations and calculations, the names of the four highest scoring individuals are forwarded to the promoting authority as required by the CBA. The City of Torrington Fire Department, while commanded by a Chief and assisted by a Deputy Chief, is overseen by the Board of Public Safety. The Board of Public Safety, a body comprised of commissioners elected by the citizens of the City of Torrington, is the exclusive promoting authority that empowered to issue appointments to the Department or to promote individuals to higher ranks therein. Neither the Chief nor the Deputy Chief has any power whatsoever to issue appointments to the Department or to promote individuals to higher ranks therein. Additionally, it is undisputed that the relevant portions of the CBA allow the Board to choose any one of the four names to fill a vacancy through promotion.

While this construct in mind, at a meeting of the Board on July 11, 2001, the Board was presented with the names of the four highest-scoring candidates in the order of their scores from highest to lowest. The list of candidates submitted to the Board was: McElroy, Hayes, Smith and Starr – in order of their final scores. The Board was also provided with a brief "portfolio" for each candidate. The portfolio included a photograph of the candidate and a one-page summary of their most relevant, positive accomplishments and attributes. The portfolio was prepared by Chief Field. Chief Field and Deputy Chief Giampaolo joined the Board in executive session, to discuss the candidates. Following a discussion in executive session, the Board emerged to promote then-Lieutenants Smith and Starr to the rank of Captain.

---

[3]Exhibits I and J are the relevant agreements. The full text was not duplicated because of the length of the agreements. Only the relevant portions are duplicated as exhibits in support of the defendants' Local Rule 56 Statement. The full text of both agreements are attached as exhibits to the defendants' Answer (dated February 26, 2003, Doc. #17 in Hayes; dated February 20,2003, Doc. #16 in McElroy).

A few weeks following the meeting, Chief Field wrote letters to both Hayes and McElroy attempting to explain the actions of the Board and to encourage both Hayes and McElroy to stay focused as firefighters and Lieutenants in the Department. Exhibits C, G. In those letters, Chief Field encouraged both Hayes and McElroy to speak with him if they had any questions or concerns. Id. Both Hayes and McElroy, prior to filing grievances because they were not promoted, met with Chief Field separately but each brought a representative from the Union to the meeting. At those meetings, both Hayes and McElroy sought concrete reasons from Chief Field for the decisions made by the Board.

Not long after the meetings with Chief Field, both Hayes and McElroy filed grievances. Exhibits D, H. The grievances were accepted and forwarded by the relevant Union officials. Id. After review of the grievances, Chief Field denied the grievances based on the plain and unambiguous language of the CBA. Exhibit I, Article XXIX; Exhibit J, Article XXIX; Exhibit M. Thereafter, both Hayes and McElroy took their grievances to the State of Connecticut Board of Labor and Mediation ("BLM") for arbitration. At this time, the grievances have been subject of several hearings and BLM has not reached a decision.

In August 2002, these lawsuits followed.

**B.     ONE TEST; TWO LAWSUITS.**

Two lawsuits were filed by the two disappointed candidates following the promotions announced at the July 11, 2001 Board meeting: Kevin Hayes and Joseph McElroy. Notably, both Hayes and McElroy are represented by the same law firm and they make materially indistinguishable allegations.

**1.     _Hayes v. City of Torrington, et al._, 3:02 CV 1542 (MRK)**

Hayes' allegations are important to recall for the purposes of the following analysis:

(a)     Field and Giampaolo are sued in their individual capacity only. Exhibit E, Hayes Complaint, ¶4;

(b)     The crux of the complaint is the defendants failed to promote the highest scoring otherwise qualified candidate. Exhibit E, Hayes Complaint, ¶7.

(c)     Hayes applied for the promotion and scored second-highest. Exhibit E, Hayes Complaint, ¶8.

(d)     Based on that score and that score alone, Hayes claims that he had a property interest in the promotion to the rank of captain. Exhibit E, Hayes Complaint, ¶10.

(e)     Hayes claims a secret meeting was held to violate unvarying past practice to promote the highest scoring candidates. Exhibit E, Hayes Complaint, ¶12.

(f)     Because of the practice, he alleges he was led to believe that the score alone would ensure promotion. Exhibit E, Hayes Complaint, ¶15.

(g)     Based on the property interest in his promotion, Hayes claims he did not receive sufficient due process to explain the reasons for not receiving the promotion. Exhibit E, Hayes Complaint, ¶17.

(h)     Hayes claims these allegations violate his Fourteenth Amendment procedural due process rights. Exhibit E, Hayes Complaint, ¶19.

(i)     Hayes claims these allegations violate his Fourteenth Amendment Equal Protection rights. Exhibit E, Hayes Complaint, ¶20.

Both Hayes and McElroy are Lieutenants with the City of Torrington Fire Department. Hayes admits he and McElroy took the same exam and McElroy scored highest and he scored second-highest. Exhibit E, Dep. Hayes, pp. 122, 124. Hayes has personal knowledge that McElroy has filed a lawsuit because he was not promoted. Exhibit E, Dep. Hayes, p. 122. Hayes admits that he and McElroy are in the same position having been passed over for promotion. Exhibit E, Dep. Hayes, pp. 122, 124. Hayes admits that but for the named plaintiff and the factual allegations that he scored second-highest rather than highest, his complaint filed in United States District Court for the District of Connecticut is materially indistinguishable from the complaint filed by Joseph McElroy. Exhibit E, Dep. Hayes, pp. 125, 125-8; *compare* Exhibit B *with* Exhibit F. Not surprisingly, McElroy's complaint and testimony are no different.

### 2.     *McElroy v. City of Torrington, et al., 3:02 CV 1525 (AVC).*

But for scoring highest after the calculation of all relevant score, McElroy's complaint is materially indistinguishable from Hayes' complaint.

(a)     Field and Giampaolo are sued in their individual capacity only. Exhibit B, McElroy Complaint, ¶4;

(b)     The crux of the complaint is the defendants failed to promote the highest scoring otherwise qualified candidate. Exhibit B, McElroy Complaint, ¶7.

(c)     McElroy applied for the promotion and scored highest. Exhibit B, McElroy Complaint, ¶8.

(d)     Based on that score and that score alone, McElroy claims that he had a property interest in the promotion to the rank of captain. Exhibit B, McElroy Complaint, ¶10.

(e)     McElroy claims a secret meeting was held to violate unvarying past practice to promote the highest scoring candidates. Exhibit B, McElroy Complaint, ¶12.

(f)     Because of the practice, he alleges he was led to believe that the score alone would ensure promotion. Exhibit B, McElroy Complaint, ¶15.

(g)     Based on the property interest in his promotion, McElroy claims he did not receive sufficient due process to explain the reasons for not receiving the promotion. Exhibit B, McElroy Complaint, ¶17.

(h)     McElroy claims these allegations violate his Fourteenth Amendment procedural due process rights. Exhibit B, McElroy Complaint, ¶19.

(i)     McElroy claims these allegations violate his Fourteenth Amendment Equal Protection rights. Exhibit B, McElroy Complaint, ¶20.

Like Hayes, McElroy concedes that he is similarly situated to Hayes. Exhibit A, Dep. McElroy, p. 81-90, 91. McElroy admits that but for the named plaintiff and the factual allegations that he scored highest rather than second-highest, his complaint filed in United States District Court for the District of Connecticut is materially indistinguishable from the complaint filed by Kevin Hayes. Exhibit A, Dep. McElroy, pp. 81-91; *compare* Exhibit B *with* Exhibit F.

### C.    PROCEDURAL HISTORY.

These defendants initially filed a Motion to Dismiss in this action and in the Hayes case pending before Judge Kravitz. Following a status conference in September 2003, Judge Kravitz denied the defendants' Motion to Dismiss without prejudice to renew said arguments at summary judgment.  The identical Motion to Dismiss pending before this Court remains pending as of the date of filing of this Motion. The defendants filed on December 22, 2003, the present Motion and Memorandum of Law in Hayes modified only in caption, in references to the parties and in minor details that do not affect the underlying argument.

The defendants, Giampaolo and Field, now move for summary judgment on the plaintiff's complaint. They submit that no questions of material fact exist that McElroy fails to state a claim upon which relief may be granted and that Giampaolo and Field are protected by the doctrine of qualified immunity.

## II.    LAW AND ARGUMENT.

### A.    STANDARD OF REVIEW.

Fed.R.Civ.P. 56(c) requires the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A "material fact" is one whose resolution will affect the ultimate determination of the case.  Id.  In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party.  Id. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Servi-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).  However "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." Samuels v. Smith, 839 F.Supp. 959, 962 (D.Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. V. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 25 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element that it bears the burden of proving at trial. Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).  Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. See First National Bank of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the district court properly relied on documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. V. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23. *Accord,* Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim). *See also* Schacht v. Wisconsin Dep't of Corrs., 175 F.3d 497, 503-04 (7th Cir. 1997) (noting summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of act to accept its version of events"); *rev'd on other grounds*, 524 U.S. 381 (1998).

**B.    BASED UPON THE UNDISPUTED MATERIAL FACTS, PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AS A MATTER OF LAW.**

As a matter of law, the plaintiff fails to state a claim upon which relief may be granted that the defendants Giampaolo and Field violated his Fourteenth Amendment Due Process rights. The starting point for this analysis is the determination whether McElroy had a property interest in the promotion to Captain. As discussed later, despite McElroy having the highest score on the exam, the presence of discretion on the part of the Board of Public Safety in the choice of which individual to promote vitiates the plaintiff's Due Process claims.

### 1.    *Due Process.*

Property interests under the Due Process Clause are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). To determine whether a contractual right can be characterized as a constitutionally protected property interest, "a court must look to whether the interest involved would be protected under state law and must weigh the 'importance to the

holder of the right.'" Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 783 (2d Cir.
1991) (quoting Brown v. Brienen, 722 F.2d 360, 364 (7th Cir. 1983)). However, "[n]ot
every contractual benefit rises to the level of a constitutionally protected property
interest." Ezekwo, 940 F.2d at 782.

In general, a public employee who has a property right in continued employment
cannot be deprived of that right without due process. See Cleveland Bd. of Educ. v.
Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The Supreme
Court has stated that:

> [t]o have a property interest in a benefit, a person clearly must have more
> than an abstract need or desire for it. He must have more than a unilateral
> expectation of it. He must, instead, have a legitimate claim of entitlement
> to it. . . . Property interests, of course, are not created by the Constitution.
> Rather, they are created and their dimensions are defined by existing
> rules or understandings that stem from an independent source such as
> state law — rules or understandings that secure certain benefits and that
> support claims of entitlement to those benefits.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

When state law "makes the pertinent official action discretionary, one's interest in
a favorable decision does not rise to the level of a property right entitled to procedural
due process protection." RR Village Ass'n v. Denver Sewer Corp., 826 F.2d 1197, 1201-
2 (2d Cir. 1987). Moreover, "mutually explicit understandings . . . do not 'create a
property interest for the purposes of due process when they are contrary to the express
provisions of regulations and statutes.'" Chu v. Schweiker, 690 F.2d 330, 334 (2d Cir.
1982) (quoting Baden v. Koch, 638 F.2d 486, 492 (2d Cir.1980)).

In this Circuit, no property interest exists in a promotion solely based on receiving
the highest score on a promotional exam. As a matter of law, an applicant's expectation
of promotion based on test rankings fails to rise to the level of a property interest
entitled to constitutional protection where the governing rules, such as the appointing
statute or collective bargaining agreement, extend the barest amount of discretion to the
promoting authority in choosing an employee to promote. See, e.g., McMenemy v. City
of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (holding no property interest in

promotion when fire chief promised to promote firefighter but statute granted City discretion in selecting candidate for promotion).[4]

This holding is consistent with other circuits. *See also*, Meyer v. City of Joplin, 281 F.3d 759 (8th Cir. 2002) (police officer receiving highest test score does not have property interest in promotion where Charter grants discretion to promoting authority); Nunez v. City of Los Angeles, 147 F.3d 867, 872-73 (9th Cir. 1998) (concluding expectancy of promotion not tantamount to entitlement given contingencies inherent in promotion process); Stuart v. Roache, 951 F.2d 446, 455 (1st Cir. 1991) ("[W]here an appointing authority may consider factors in addition to the applicant's ranking on an eligibility list, a police officer's expectation of promotion based on that list will not rise to the level of a 'property interest' entitled to constitutional protection."), *cert. denied*, 504 U.S. 913 (1992); Bigby v. City of Chicago, 766 F.2d 1053, 1056 (7th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986) ("[T]hese sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant."); Burns v. Sullivan, 619 F.2d 99, 104 (1st Cir.) (concluding police officer did not possess property right in promotion based solely upon written examination score), *cert. denied*, 449 U.S. 893 (1980).

On this basis, summary judgment is appropriate in favor of Giampaolo and Field. McElroy has no property interest in his promotion (or the denial of that promotion for that matter). Under procedural due process analysis, no process was due after he was denied promotion. He is still employed and it is undisputed that he has a property interest in his public employment for continued employment (at his present rank). Looking to McMenemy, Meyer v. City of Joplin, Nunez v City of Los Angeles, Stuart v. Roache, and the other cases cited above, it is clear that McElroy does not have a property interest in his promotion – whether he received it or not, arising from the score he achieved on the examination. Additionally, the so-called expectation that he would be promoted does not transform his receipt of the highest score into a property interest

---

[4] Indeed, a court in the Eastern District of New York concluded that it was proper to dismiss claims of the highest-scoring candidate on the police appointment list that his due process and equal protection rights were violated in circumstances similar to those presented by Hayes. Gallo v. Suffolk County Police Dept., 232 F.Supp.2d 20 (E.D.N.Y. 2002). Notably, the Gallo court relied on McMenemy to reach this conclusion.

because of the discretion afforded to the Board of Public Safety and the law established by Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972).

### 2. *Perry v. Sindermann*, 408 U.S. 593 (1972) Does Not Change The Analysis.

Plaintiff's due process claim rests upon a right claimed to stem from the past practices and mutual understandings within the City of Torrington Fire Department. It is true that "a mutually explicit understanding" may create a "claim of entitlement" protectable under the Fourteenth Amendment. Perry v. Sindermann, 408 U.S. 593, 601 (1972). It is equally true, however, that such a mutually explicit understanding cannot create a protectable property interest when the understanding is contrary to the express provisions of formal rules, regulations and statutes. Chu v. Schweiker, 690 F.2d 330, 334 (2d Cir. 1982) (*citing* Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980)). A mutual understanding contrary to formal rules, regulations and statutory provisions may give rise to a cause of action for breach of contract, but will not give rise to a protectable property interest. Zimmerman v. Board of Educ. of Town of Branford, 597 F. Supp. 72 (1984).

In Staheli v. University of Mississippi, 854 F.2d 121, 125 (5th Cir. 1988), the plaintiff was a professor at a university that had a formal tenure policy. The policy outlined several broad requirements that a professor must fulfill to become tenured, one of which was publishing papers in prestigious journals. The plaintiff's previous direct supervisor had assured him over the previous four years that he was making satisfactory progress towards tenure and instructed the plaintiff to focus on obtaining speaking engagements, not publishing papers. The university eventually denied the plaintiff tenure, partially because he had no published papers, and he sued. The plaintiff alleged that he had a property interest in his job because he fulfilled the requirements outlined in the formal policy and because of the mutual understanding with his previous supervisor that he would be tenured.

The Fifth Circuit affirmed a summary judgment that plaintiff possessed no property interest in continued employment. The court held that, the very existence of a formal tenure policy negated the possibility of "de facto" tenure. The court also stated,

with reference to the representations of the plaintiff's supervisor, that the plaintiff failed to prove that the supervisor spoke for the university.  Moreover, even if the supervisor did speak for the university, the court stated, "when formal rules and informal understandings conflict, the formal rules control. In other words, when the state provides an explicit and formal policy governing entitlement to a job, informal and customary understandings cannot create a property interest in the face of the formal rules." Staheli, 854 F.2d at 125; *see also* Scanlon v. Department of Mental Health, 828 F. Supp. 421, 425 n. 6 (S.D.Miss. 1993) (*quoting* Staheli); Raju v. Rhodes, 809 F. Supp. 1220, 1243 (S.D.Miss. 1992) (*quoting* Staheli); *Accord*, Strother v,Columbia-Brazoria Indep. School Dist., 839 F. Supp. 459 (1993).

Informal understandings may lead to a property interest only in one of two ways: (1) if there is no officially promulgated position; Staheli, 854 F.2d at 125; Scanlon, 828 F. Supp. at 425; or (2) if they are consistent with official law. Raju, 809 F. Supp. at 1242. Strother v,Columbia-Brazoria Indep. School Dist., 839 F. Supp. 459 (1993). Turning to the facts of the present case, the CBA is the undisputed officially promulgated position. It is clear, unambiguous and contradicts the plaintiff's assertion that the informal understandings and past practices should grant him a promotion. Like the formal policy which negated the plaintiff's claims in Staheli, the formal CBA here negates the so-called "past practices" claimed by the plaintiff.

The case of Houk v. Village of Oak Lawn, 647 F. Supp. 710 (N.D.Ill. 1986) reviewed and rejected a claim similar to that asserted by Hayes. In Houk, police officers of the Village of Oak Lawn claimed their procedural due process rights were violated when they were not promoted to the rank of Sergeant. The Houk plaintiffs' claim of entitled to a promotion was based on representations made to them as police officers over the years and to provisions of the Village's rules. Id. 715-6. In their Complaint, the Houk plaintiffs alleged "[Defendants] stated [plaintiffs] would be promoted to such rank in the order of their position on the posted list immediately as openings in that rank were created or existed." Id. 722. The Houk court rejected the plaintiff's claims because the Village's rules adopted what is known in the human resources field as the "Rule of Three." Id. In Houk, Rule 150.8, the official manifestation of the Rule of Three, expressly

permitted the Board to fill vacancies from any one of the three top-ranked officers. Id. In so finding, the Houk court rejected the claim that the plaintiffs were guaranteed promotion. Rather, the Houk court specifically found that the plaintiffs "simply had a 'unilateral expectation' . . . of, rather than an 'entitlement' to, promotion. Houk, 647 F.Supp. at 716 (internal citations omitted).

The Houk court's discussion in support of this conclusion bears repeating:

> The statute [Rule of Three] clearly allows the Board of Fire and Police Commissioners to promote any of the top three candidates and does not restrict their discretion in choosing from among the top three candidates. It is clear that plaintiff . . . cannot complain that he was denied a promotion to which he was entitled since even if he had been among the top three candidates for promotion or even if he had been ranked number one on the eligibility roster, he alleges no basis for finding that he was entitled to a promotion as a result of that ranking. Clearly, under the statute he would have no more than a unilateral expectation of promotion.

Houk, *quoting* Hermes v. Hein, 479 F. Supp. 820, 824 (N.D. Ill. 1979).

The Houk court also rejected plaintiffs' claims that the defendants' alleged representations that promotions would be in accord with test performance and Board Rules, concluding those representations created a legitimate expectation defendants would comply with the Rule of Three, not that defendants would necessarily promote the plaintiffs. Id. 716-7. The Houk court continued:

> But these sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant. It is true that state law requires promotions of government employees, including policemen, to be "on the basis of ascertained merit and seniority in service and examination." . . . The statute and ordinance create an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation as to be "property" in the constitutional sense. . . . .Furthermore, the promoting officials are authorized to choose among the highest-rated applicants, and no criteria are provided for the choice.

Houk, 647 F.Supp at 717.

This is exactly the conclusion of this Circuit in McMenemy.  Like the plaintiffs in Houk, Hayes had only an expectation of, and not an entitlement to, promotion. McElroy plainly does not have a protectable property right in Fourteenth Amendment terms. The

present case is little different from the situation faced by the court in <u>Houk</u>. Like the <u>Houk</u> plaintiffs, McElroy has only a mere unilateral expectation to promotion. Hayes concedes that he has been well aware of the provisions of the CBA and that neither Deputy Chief Giampaolo nor Chief Field had any power to promote him. Like the situation in <u>Houk</u>, formal rules (Rule 150.8 in Houk and Article XXIX in the present case), exist which stand for essentially the same promotion: the Rule of Three defeats any claim to entitlement. In the present case, the governing Rule is the Rule of Four. Moreover, like <u>Houk</u>, the court should reject McElroy's claim that the mutual understanding establishes a property interest. McElroy's claimed mutual understanding is contrary to express provisions of the CBA and should be rejected. Past practices cannot trump express provisions of the relevant collective bargaining agreement, rules, regulations or otherwise change the outcome. McElroy has no property interest.

In <u>Ezekwo v. NYC Health & Hospitals Corp</u>, 940 F.2d 775 (2d cir. 1991), this Circuit discussed the concept of reasonable expectation based on past custom and practice to become Chief Resident. In <u>Ezekwo</u>, no contractual provision existed one way or another way concerning appointment to Chief Resident.  In <u>Ezekwo</u>, it made sense that the Circuit found mutual understandings and past practices could supplement the written contract between the parties and transform the appointment of a resident to Chief Resident because the written contract, the polices, rules and regulations were silent on the issue. In the present case, the CBA language negates the "reasonable expectation" component.  Moreover, it simply does not make sense that an employee can have a extra-contractual entitlement to a promotion where the bargaining agreement expressly addresses the issue and does not create such an entitlement.

Accordingly, the defendants' Motion for Summary Judgment must be granted.

**C.**     **BASED UPON THE UNDISPUTED MATERIAL FACTS, PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AS A MATTER OF LAW.**

**1.**     **Equal Protection.**

The plaintiff appears to press an equal protection claim pursuant to a "class of one" theory. The defendant submits that he is entitled to summary judgment as to a "class of one" claim for the following reasons: (i) the plaintiff cannot maintain an equal protection "class of one" claim absent evidence of malice or bad faith; (ii) the plaintiff cannot maintain an equal protection "class of one" claim where he has suffered no differential treatment in the terms of his employment; (iii) other similarly situated employees were not treated differently.

In Village of Willowbrook v. Olech, 528 U.S. 562, 565 (2000), the plaintiff alleged that "the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners." The plaintiff further alleged that said demand was irrational and wholly arbitrary. Id. The Court held that these allegations were sufficient to survive a 12(b)6 motion for failure to state a cognizable claim under the Equal Protection Clause. Id. at 563, 565.

Prior to Willowbrook, the rule in the Second Circuit was that a selective enforcement claim under the Equal Protection Clause required a showing that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Giordano v. City of New York, 274 F.3d 740, 750-51 (2nd Cir. 2001); see also, Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2nd Cir. 2001). To date, the Second Circuit has expressly declined to address the issue of whether Willowbrook has changed this Circuit's long-standing requirement that a "class of one" plaintiff show malice or bad faith. See Giordano, 274 F.3d at 751; Harlen, 273 F.3d at 500. This Circuit has, however, stated that a "class of one" plaintiff

must still show "not only 'irrational and wholly arbitrary' acts, but also <u>intentional</u> disparate treatment." <u>Giordano</u>, 274 F.3d at 751 (internal citations omitted).

An essential element of a "class of one" claim is that the plaintiff was ***treated differently from all others similarly situated***.  *See* <u>Willowbrook</u>, 528 U.S. at 564; <u>Jackson v. Burke</u>, 256 F.3d 93, 96-97 (2nd Cir. 2001); <u>Giordano</u>, 274 F.3d at 750-51; and <u>Harlen</u>, 273 F.3d at 499. When plaintiffs seek to draw inferences of discrimination by showing that they were "similarly situated in all material respects" to the individuals to whom they compare themselves, <u>Shumway v. United Parcel Serv., Inc.</u>, 118 F.3d 60, 64 (2d Cir. 1997), their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances.  <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 40 (2d Cir. 2000); *see also* <u>McGuinness v. Lincoln Hall</u>, 2001 WL 993572 (2d Cir. 2001).  What is key is that they be similar in significant respects. <u>Id.</u> *Accord*, <u>Lizardo v. Denny's, Inc.</u>, 270 F.3d 94, 101 (2nd Cir. 2001).

### 2.     <u>McElroy's Equal Protection Claim Fails.</u>

#### i.     *There Is No Evidence Of Malice Or Bad Faith.*

In this case, there is no evidence, nor even an allegation, that Giampaolo or Field acted out of vindictiveness or ill will towards the plaintiff.  As such, the plaintiff's claim should fail. Justice Breyer wrote the following in his concurring opinion in <u>Willowbrook</u>:

> The Solicitor General and the village of Willowbrook have expressed concern lest we interpret the Equal Protection Clause in this case in a way that would transform many ordinary violations of city or state law into violations of the Constitution.  It might be thought that a rule that looks only to an intentional difference in treatment and a lack of a rational basis for that different treatment would work such a transformation….  This case, however, does not directly raise the question of whether the simple and common instance of a faulty zoning decision would violate the Equal Protection Clause…because the respondent had alleged an extra factor as well - a factor that the Court of Appeals called "vindictive action," "illegitimate animus," or "ill will."…  [T]he presence of that added factor in this case is sufficient to minimize any concern about transforming run-of-the-mill zoning cases into cases of constitutional right.

<u>Willowbrook</u>, 528 U.S. at 565-66 (Breyer, J., concurring).

Prior to Willowbrook, the Second Circuit consistently held that malice or bad faith was essential to proving a "class of one" equal protection claim. *See* Giordano, 274 F.3d at 750-51; Harlen, 273 F.3d at 499; Lisa'a Party City, Inc. v. Town of Henriettta, 185 F.3d 12, 16 (2nd Cir. 1999); LeClair v. Saunders, 627 F.2d 606, 609-10 (2nd Cir. 1980). That law is unchanged. As stated above, the Second Circuit has yet to address the issue of whether a plaintiff must prove malice of bad faith in light of *Willowbrook*. It is important to note, however, that in Willowbrook, the Court was deciding only whether the plaintiff's complaint could survive a 12(b)6 motion. Moreover, Justice Breyer noted that personal animus was alleged in Willowbrook. Other circuits have interpreted Willowbrook as not eliminating the personal animus requirement. *See* Harlen, 273 F.3d at 500, *citing*, Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000), *cert. denied*, 531 U.S. 1080 (2001); Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000). The defendant urges this court to do the same. Absent any evidence of malicious intent, the plaintiff's "class of one" claim should fail.

### ii.   No Adverse Employment Action Was Taken

In order to prevail on a selective enforcement "class of one" claim, the plaintiff must establish that some action or deliberate inaction was taken against him. *See* e.g., Latrieste Restaurant v. Village of Port Chester, 188 F.3d 65 (2nd Cir. 1999) (enforcement of zoning regulation); Lisa's Party City, 185 F.3d at 13 (denial of plaintiff's request for a variance); Zahra v. Town of Southold, 48 F.3d 674, 683 (2nd Cir. 1995) (enforcement of Town Code by issuing remedial orders and tickets); FSK Drug Cvorp. v. Perales, 960 F.2d 6, 7 (2nd Cir. 1992) (denial of re-enrollment application without prior hearing); LeClair, 627 F.2d at 608 (suspension of plaintiff's farm). In this case, there is no evidence of any change to the plaintiff's working conditions.

The defendants submit in the absence of an arbitrary adverse employment action, a cognizable equal protection claim does not arise. In order to prevail on a disparate treatment claim under Section 1983, a plaintiff is required to show intent, as well as an adverse employment action. *See* Sorlucco v. New York City Police Dept., 888 F.2d 2 (2nd Cir. 1989); Weeks v. New York State, 273 F.3d 76, 85 (2nd Cir. 2001);

McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  A lesser obligation certainly is not warranted for a "class of one" plaintiff that does not rely on his status as a member of a protected class.

"An adverse employment action is a 'materially adverse change in the terms and conditions of employment.'"  Weeks, 273 F.3d at 85.  "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." Martin v. Kroger Co., 65 F. Supp.2d 516, 557 (S.D. Tex. 1999), quoting, Watts, 170 F.3d at 511. In this case, Deputy Chief Giampaolo and Chief Field did not subject the plaintiff to any adverse employment action.  It is undisputed that Deputy Chief Giampaolo and Chief Field never reduced the plaintiff's pay or placed him on suspension; and never removed any of the plaintiff's duties. To the extent that the promotion of others is an adverse action, said action was taken by the Board of Public Safety, not Deputy Chief Giampaolo or Chief Field. Absent evidence of an adverse employment action, the plaintiff's action must fail - because the plaintiff has not been deprived of any constitutional right.

### iii.    McElroy is not a Class of One

An essential element of a "class of one" claim is that the plaintiff was **treated differently from all others similarly situated**.   See Willowbrook, 528 U.S. at 564; Jackson v. Burke, 256 F.3d 93, 96-97 (2nd Cir. 2001); Giordano, 274 F.3d at 750-51; and Harlen, 273 F.3d at 499. When plaintiffs seek to draw inferences of discrimination by showing that they were "similarly situated in all material respects" to the individuals to whom they compare themselves, Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997), their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances.  Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000); see also McGuinness v. Lincoln Hall, 2001 WL 993572 (2d Cir. 2001).  What is key is that they be similar in significant respects. Id. Accord, Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2nd Cir. 2001).

The undisputed evidence demonstrates that McElroy was treated just like all other similarly situated persons. Both McElroy and Hayes are Lieutenants with the City

of Torrington Fire Department. McElroy knows that Kevin Hayes has filed a lawsuit for not being promoted. Exhibit A, Dep. McElroy, p. 57. McElroy and Hayes took the same exam and McElroy scored highest and Hayes scored second-highest. McElroy and Hayes are in the same position having been passed over for promotion. McElroy admits that but for the named plaintiff and the factual allegations that he scored highest rather than second-highest, his complaint filed in United States District Court for the District of Connecticut is materially indistinguishable from the complaint filed by Kevin Hayes. **Exhibit A, Dep. McElroy, pp. 81-91;** *compare* **Exhibit B** *with* **Exhibit F.** McElroy and Hayes were – by their own allegations – the top-scoring candidates. Exhibit B, McElroy Complaint, ¶7; Exhibit E, Hayes Complaint, ¶7. Both were passed over for promotion based on the discretion afforded to the Board of Public Safety by the CBA. Considering McMenemy and the other cases cited above,[5] the collective bargaining agreement between the Union and the City that pertains to the firefighters and the promotions in question clearly states that any name on the list of four candidates may be promoted and provides the "broad discretion" described in McMenemy and Baden v. Koch.

Article XXIX of the Agreement clearly states:

The top four (4) applicants' names shall be submitted to the Board of Public Safety in order of their scores and said Board of Public Safety shall select any one (1) of said candidates and appoint to the position forthwith. Section 1.f.

The discretion embodied in Article XXIX is no different that the statutory process reviewed in McMenemy and the related cases. Notably, in McMenemy, the court held

---

[5]*See, e.g.,* McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) (holding no property interest in promotion when fire chief promised to promote firefighter but statute granted City discretion in selecting candidate for promotion). *See also,* Meyer v. City of Joplin, 281 F.3d 759 (8th Cir. 2002) (police officer receiving highest test score does not have property interest in promotion where Charter grants discretion to promoting authority); Nunez v. City of Los Angeles, 147 F.3d 867, 872-73 (9th Cir. 1998) (concluding expectancy of promotion not tantamount to entitlement given contingencies inherent in promotion process); Stuart v. Roache, 951 F.2d 446, 455 (1st Cir. 1991) ("[W]here an appointing authority may consider factors in addition to the applicant's ranking on an eligibility list, a police officer's expectation of promotion based on that list will not rise to the level of a 'property interest' entitled to constitutional protection."), *cert. denied*, 504 U.S. 913 (1992); Bigby v. City of Chicago, 766 F.2d 1053, 1056 (7th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986) ("[T]hese sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant."); Burns v. Sullivan, 619 F.2d 99, 104 (1st Cir.) (concluding police officer did not possess property right in promotion based solely upon written examination score), *cert. denied*, 449 U.S. 893 (1980).

that "[e]ven if the Chief at one time intended to promote McMenemy and even if he expressed that intention as a promise, the City's broad discretion in matters of promotion, granted by statute, prevent that promise from ripening into an entitlement." McMenemy, *supra*, at 286-87 (*citing* Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980) ("[M]utual understandings and customs could not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes.")

The same should apply here for Hayes.  Given the use of the word "any," summary judgment must be granted. The discretion embodied in Article XXIX is no different that the statutory process reviewed in McMenemy and the related cases. "Any" contemplates the broadest discretion possible for promotion from the list of four. No other reading is reasonable.

Accordingly, summary judgment is appropriate in favor of Deputy Chief Giampaolo and Chief Field.

**D.     EVEN IF THE COURT CONCLUDES THAT THE PLAINTIFF'S COMPLAINT ADEQUATELY STATES DUE PROCESS AND/OR EQUAL PROTECTION CLAIMS, THE CLAIMS AGAINST GIAMPAOLO AND FIELD ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY.**

In response to the plaintiff's complaint, Giampaolo and Field have asserted their actions are protected by the doctrine of qualified immunity.

**1.     Doctrine of Qualified Immunity.**

The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997), *quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is more than just a defense; **the doctrine of qualified immunity is an immunity from suit**. Locurto v. Safir, 264 F.3d at 163. (emphasis added.)

A right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing

violates that right . . . [T]he unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). *See, e.g.* <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law"); <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 528 (1985) (officials are immune unless "the law clearly proscribed the actions they took").

In determining whether a particular right was clearly established at the time defendants acted, this Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. <u>Jermosen v. Smith</u>, 945 F.2d 547, 550 (2d Cir. 1991). *See* <u>Francis v. Coughlin</u>, 891 F.2d 43, 46 (2d Cir. 1989), *citing* <u>Anderson</u>, 483 U.S. at 640.

Recently, the Supreme Court has re-emphasized the need to look carefully at the "contours" of the right allegedly violated by a public official when undertaking the qualified immunity analysis. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). With regard to this litigation, for instance, there is no doubt that the case of <u>Graham v. Connor</u>, 490 U.S. 386 (1989), clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet, the Supreme Court has concluded that observation of that general principle is simply not enough when undertaking a qualified immunity analysis.

In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court reiterated the need for a careful examination of the particular constitutional right alleged to have been violated when considering the defense of qualified immunity. Not only should the right itself be identified with a higher degree of specificity, the precise contours of ***the application of that more specific right to the facts at hand must be made by the district court reviewing a defense of qualified immunity***. <u>Saucier v. Katz</u>, 533 U.S. 194 (2001) (emphasis added). The <u>Saucier v. Katz</u> Court reiterated the admonition from <u>Anderson v. Creighton</u> that:

[t]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Saucier v. Katz, 533 U.S. at 202.

Since the decision in Saucier v. Katz, the Supreme Court decided Hope v. Pelzer, 536 U.S. 730 (2002), providing additional guidance to litigants and courts examining the issues within and part of the defense of qualified immunity. In Hope v. Pelzer, 536 U.S. 730 (2002), the Supreme Court denied qualified immunity to three correctional officers who had handcuffed a prisoner to a "hitching post" as punishment for non-compliance with various orders and rules. The Supreme Court's decision reversed the Court of Appeals for the Eleventh Circuit which had affirmed the district court's grant of summary judgment based on qualified immunity to the three correction officers in question.

The Supreme Court in *Hope* rejected the Eleventh Circuit's rule that the test for the existence of a clearly established right that would allow a public official to understand the potential wrongfulness of his conduct should be evaluated in light of federal law that was "pre-existing, obvious and mandatory." *See* Hope, 536 U.S. at 734. While the Eleventh Circuit had agreed that the conduct itself was violative of the Eighth Amendment, the panel held the corrections officers were not on notice that such conduct was unlawful. The Eleventh Circuit held that prior cases should be "materially similar." Finding none, the Eleventh Circuit affirmed the district court's decision granting qualified immunity to the corrections officers.

In reversing the Court of Appeals for the Eleventh Circuit, the Supreme Court rejected the gloss placed on the Saucier v. Katz analysis for qualified immunity by that Circuit that there must be reported cases that are "materially similar" before a violation is found. In so holding, the Supreme Court adopted the "fair warning" standard found in United States v. Lanier,  520 U.S. 259 (1997) as an additional methodology to evaluate the second prong of the qualified immunity analysis.

In <u>Lanier</u>, the Supreme Court began its analysis with the understanding that in the situation of qualified immunity, "it is to say that in the light of pre-existing law the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). The Court reasoned that officers sued in a civil action for damages under 42 U.S.C. § 1983 should have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C. § 242. In reviewing Section 242, the Court observed that it makes it a crime for a state official to act "willfully" and under color of law to deprive a person of rights protected by the Constitution. The <u>Lanier</u> Court held that the defendant was entitled to "fair warning" that his conduct deprived his victim of a constitutional right, and that the standard for determining the adequacy of that warning was the same as the standard for determining whether a constitutional right was "clearly established" in civil litigation under Section 1983.

In <u>Lanier</u>, the Eleventh Circuit had assumed (and held) that a criminal defendant should be held to a "substantially" higher standard of notice for the purposes of Section 242. In <u>Lanier</u>, the Supreme Court rejected this approach, and reasoned:

> This is not to say, of course, that the single warning standard points to a single level of specificity sufficient in every instance. In some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary. But general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.

<u>Hope</u>, 536 U.S. at 739-40 (internal citations omitted).

In sum, the Supreme Court in <u>Hope</u> rejected the "materially similar" gloss placed on a qualified immunity analysis as well as the notion that the absence of a reported case on point equates to a holding that qualified immunity applied in a given situation. In so holding, the Supreme Court emphasized the need for the detailed, searching and thorough analysis each and every time the defense based on the doctrine of qualified immunity is raised. The decision in <u>Hope v. Pelzer</u> is, in one sense, a continuation of the Supreme Court's admonition that the most important part of any qualified immunity

decision is the examination of the constitutional right at issue and "the precise contours of the application of that more specific right to the facts at hand must be made." Saucier v. Katz, 533 U.S. 194, 202 (2001). In rejecting the "materially similar" standard espoused by the Eleventh Circuit, the Court has done nothing more than demand a high standard – not in pleading or proof – but in the continued, searching, and thorough, step-by-step examination of the defense of qualified immunity in the manner long-established by clear and unequivocal precedent.

In Hope, the Court held that the corrections officers were on notice that their conduct was clearly unlawful. Not long after the decision in Hope, the Second Circuit stated:

> Our analysis of a qualified immunity claim consists of a three step inquiry. *See* Wilson v. Layne, 526 U.S. 603, 609 (1999); X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999). First, we must determine whether plaintiff has alleged a violation of a constitutional right. Then we consider if the violated right was clearly established at the time of the conduct. *See* Saucier v. Katz, 533 U.S. 194, 201 (2001). Finally, if plaintiff had a clearly established, constitutionally protected right that was violated by the actions of the [defendants], he or she must demonstrate that defendants' actions were not objectively reasonable. X-Men, 196 F.3d at 66. This three step inquiry should typically be done in sequential order. Cty. of Sacramento v. Lewis, 523 U.S. 833, 842, n. 5 (1998).

Harhay v. Town of Ellington, et al., 323 F.3d 206, 211 (2d Cir. 2003).

This statement of the law succinctly captures just the sort of step-by-step, orderly methodology mandated by twenty years of Supreme Court precedent. Furthermore, this Court recognized that the failure to establish any one step of the analysis grants qualified immunity to the defendant in question.

Defendants may benefit from qualified immunity if plaintiff is unable to establish any of these three steps. *See* X-Men, 196 F.3d at 65-66 ("These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third."). Thus, if there is no deprivation of a constitutional right alleged by [the plaintiff] (the first step), there is no need for the court to decide if the right was clearly established at the time the [defendants] acted (the second step). *See* Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Harhay v. Town of Ellington, et al., 323 F.3d 206, 211-2 (2d Cir. 2003).

Therefore, before applying the qualified immunity standard, the Court must ask whether there was a constitutional violation in the first instance. *See* Stuto v. Fleishman, 164 F.3d 820, 825 (2d Cir. 1999).

### 2.    McElroy Did Not Have A Constitutional Right To Promotion.

As discussed above, this Circuit's decision in McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001) holds that no property interest exists in a promotion. Given that holding, no manipulation of the plaintiff's claims changes the fact that no property interest equals no constitutional violation. Plaintiff's purported past practices claims cannot alter the clear and unambiguous terms of the CBA. Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980) ("[M]utual understandings and customs could not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes.")) The Board was empowered to choose any one (or more based on the number of vacancies) of the four names forwarded for consideration. Exhibit I, Article XXIX; Exhibit J, Article XXIX. "Not every contractual benefit rises to the level of a constitutionally protected property interest." Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 782 (2d Cir. 1991).

The Plaintiff's abstract hopes, expectations, desires and dreams that he would be promoted to Captain does not equate into the legitimate claim of entitlement required by our law. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  The fact that neither Deputy Chief Giampaolo nor Chief Field had any power to actually promote and that the Board had complete discretion to

promote any one of the four underscores to the fantastic nature of the plaintiff's claims. *See, e.g.,* <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 286 (2d Cir. 2001) (holding no property interest in promotion when fire chief promised to promote firefighter but statute granted City discretion in selecting candidate for promotion). The plaintiff's concession on this point is equally demonstrative why no constitutional violation occurred and summary judgment should enter in favor of the defendants.

### 3.    <u>McElroy's Claimed Constitutional Right to A Promotion Are Not Clearly Established.</u>

The Supreme Court mandates the careful examination of the claimed constitutional rights in question when examining the defense of qualified immunity. Completion of this analysis leads to one conclusion - the rights claimed by McElroy are not clearly established as a matter of law. McElroy's complaint hinges on the finding that he had a property interest in his promotion based on the score. One hardly gains from the cases discussed that this so-called property interest was clearly established to overcome a defense based on qualified immunity.

With regard to his due process claims, starting in this Circuit, an applicant's expectation of promotion based on test rankings fails to rise to the level of a property interest entitled to constitutional protection where the governing rules, such as the appointing statute or collective bargaining agreement, extend the barest amount of discretion to the promoting authority in choosing an employee to promote. *See, e.g.,* <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 286 (2d Cir. 2001) (holding no property interest in promotion when fire chief promised to promote firefighter but statute granted City discretion in selecting candidate for promotion). Other circuits agree. *See, supra*, n.5. Accordingly, the rights under which Hayes seeks protection were hardly clearly established in 2001. In fact, the express law of this Circuit demonstrates that the rights in question were clearly established opposite to the claims of McElroy. This Circuit has held that no property interest exists in a promotion solely based on scores.

Moreover, given the unambiguous language of the governing Collective Bargaining Agreement and other, much longer established law of this Circuit, the claimed rights by McElroy that past practice entitles him to promotion are similarly not

clearly established.  The Agreement itself grants the Board of Public Safety broad discretion to choose "any" candidate from the list of four highest scoring individuals. *See* Exhibits A, B. The discretion embodied in Article XXIX is no different that the statutory process reviewed in McMenemy and the related cases. Indeed, McMenemy and the related cases reject any argument that mutual understandings concerning promotions can ripen into a property interest.

Taking the cases in this Circuit, the cases in sister Circuits, the discretion afforded the Board of Public Safety and the language of the Agreement, it cannot be fairly said that Giampaolo or Field had "fair warning" that their actions might violate clearly established constitutional rights. See Hope v. Pelzer, 536 U.S. 730 (2002); Saucier v. Katz, 533 U.S. 194 (2001). If anything, the reported decisions point to the inescapable conclusion that the rights were not clearly established as to all aspects of Hayes' claims.

With regard to the equal protection claims, in this case, the plaintiff asserts a "class of one" claim against defendant Giampaolo and Field based on conduct that occurred in 2001. At the time of the alleged conduct, however, Willowbrook had yet to be decided, and the law of the Second Circuit was that a selective enforcement claim under the Equal Protection Clause required a showing that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or *malicious or bad faith intent to injure a person.*"  Giordano, 274 F.3d at 750-51 (emphasis added); see also, Harlen, 273 F.3d at 499; Lisa'a Party City, 185 F.3d at 16; LeClair, 627 F.2d at 609-10.  The law does not require municipal employees to speculate as to the state of the law, or to predict any changes in the law.   The reasonableness of Giampaolo's and Field's conduct must be analyzed in light of the law at the time of his alleged conduct - therefore, any potential impact of Willowbrook is irrelevant to the issue of qualified immunity in this case. As there is no evidence that Giampaolo or Field acted with malice or a bad faith intent to injure the plaintiff, a reasonable officer in Giampaolo or Field

position would not have known that the alleged conduct violated the plaintiff's right to equal protection as a "class of one."

Furthermore, Giampaolo and Field are entitled to qualified immunity because they never took an adverse employment action against the plaintiff.  An adverse employment action is a requisite of any disparate treatment claim 42 U.S.C. §1983. And the defendant is not aware of any case law in the Second Circuit whereby an employee set forth a "class of one" claim absent evidence of some adverse action or inaction.  Given this law, and absence of law, a reasonable officer in Giampaolo and Field's position would not have known that the alleged conduct deprived the plaintiff of a *clearly established* constitutional or statutory right, especially when they, themselves, have no power to promote or appoint. The plaintiff was not *treated* differently.  Hayes was treated just like McElroy – a person similarly situated.

### 4.    The Actions Of Deputy Chief Giampaolo And Chief Field Were Objectively Reasonable.

As discussed above, the plaintiff did not have a clearly established constitutional right to the due process to the promotion to Captain. Similarly, McElroy has no clearly established right to equal protection to Captain.  Even if McElroy had a clearly established constitutional right under either theory, Deputy Chief Giampaolo and Chief Field acted in an objectively reasonable manner as good managers or commanding officers would under the circumstances. Indeed, the actions of Deputy Chief Giampaolo and Chief Field demonstrate the paradigm of reasonableness. So long as their actions were reasonable, the doctrine of qualified immunity does more than protects them from liability; it provides immunity from this suit. Locurto v. Safir, 264 F.3d at 163. (emphasis added.)

With regard to Deputy Chief Giampaolo, it is undisputed that he had no power to promote or appoint anyone to any position. McElroy concedes the Deputy Chief Giampaolo did not promise to promote McElroy. It is undisputed that Deputy Chief Giampaolo did not make any direct recommendation of any candidate during the Board meeting on July 11, 2001. Deputy Chief Giampaolo did, as any officer would when asked by the governing municipal board charged with making promotion decisions.

Giampaolo gave direct answers to direct questions. The Board, the sole authority to make the promotion decisions, made the decision itself. No reasonable jury could find that this sort of conduct is anything other than objectively reasonable. No reasonable jury could find that Deputy Chief Giampaolo had any power to promote anyone.

With regard to Chief Field, it is equally undisputed that he had no power to promote or appoint anyone to any position. Like Deputy Chief Giampaolo, McElroy concedes that Chief Field did not promise to promote him. It is equally undisputed that Chief Field did not make any direct recommendation of any candidate during the Board meeting on July 11, 2001. Chief Field did, as any officer would when asked by the governing municipal board charged with making promotion decisions. Field gave direct answers to direct questions. The Board, the sole authority to make the promotion decision, made the decision itself. No reasonable jury could find that this sort of conduct is anything other than objectively reasonable. No reasonable jury could find that Chief Field had any power to promote anyone.

Accordingly, summary judgment is appropriate in favor of the defendants, Deputy Chief Giampaolo and Chief Field based on the doctrine of qualified immunity.

## III.    <u>CONCLUSION.</u>

For the reasons set forth above, the defendants, JAYE GIAMPAOLO and JOHN B. FIELD, JR., pray that their Motion for Summary Judgment is granted.

THE DEFENDANTS,
JAYE GIAMPAOLO and JOHN B. FIELD, JR.

<u>/s/ John J. Radshaw, III</u>
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06114
(860) 249-1361
(860) 249-7665 (fax)
jradshaw@hl-law.com

## CERTIFICATION

I hereby certify that on January 16, 2004, a copy of foregoing was served by U.S. Mail, postage pre-paid to all *pro se* parties and counsel of record.

Norman A. Pattis, Esquire
Christy Doyle, Esquire
WILLIAMS & PATTIS, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

Constance L. Epstein, Esquire
Jack G. Steigelfest, Esquire
HOWARD, KOHN, SPRAGUE &
FITZGERALD, LLP
237 Buckingham Street
Post Office Box 261798
Hartford, CT 06126-1798

Albert Vasko, Esquire
Corporation Counsel
CITY OF TORRINGTON
140 Main Street
Torrington, CT 06790


/s/ John J. Radshaw, III
John J. Radshaw, III