FILED

2004 FEB -9  P 12: 13

UNITED STATES DISTRICT COURT
DISTRICT COURT
HARTFORD, CT.

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH McELROY | : |
| VS. | : |
| CITY OF TORRINGTON, | : |
| JAMES POTTER, | : |
| CAROLANN KENNEDY, | : NO. 3:02CV1525(AVC) |
| THOMAS TELMAN, | : |
| ROBERT ZORDAN, | : |
| KENNETH FUCHSMAN, | : |
| CHRISTOPHER JANCO, | : |
| JAYE GIAMPAOLO and | : |
| JOHN B. FIELD, JR. | : FEBRUARY 9, 2004 |

## PLAINTIFF'S LOCAL RULE 56 STATEMENT
## REGARDING MOTION OF DEFENDANTS GIAMPAOLO AND FIELD

1. Agree.

2. Agree.

3. Agree.

4. Agree.

5. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Agree.

1

10. Agree.

11. Agree.

12. Agree.

13. Agree.

14. Agree.

15. Agree.

16. Agree.

17. Agree.

18. Agree that Field wrote letters to the persons indicated. Otherwise, disagree. (See the letters submitted; Hayes deposition transcript, p. 109; Hayes Interrogatory Answers, ¶¶ 16, 17; McElroy deposition transcript, p. 44)[1]

19. Agree.

20. Agree that defendant Field did not, despite express requests that he do so, state any reason for the refusal to promote Hayes and McElroy. Disagree with any implication that he did so implicitly. In fact, he was unable to do so since there obviously was no rational basis for such refusal. (Ibid.)

21. Agree.

---

[1] All evidence in this matter already has been filed with the court by the plaintiff and the other defendants in connection with the motion of the other defendants for summary judgment which presently is *sub judice*.

2

22. Agree that the grievances were denied by defendant Field. Disagree with remainder because defendant Field has offered no evidence to support the claim that this was the reason the grievances were denied.

23. Agree.

24. Agree, except that the correct name of the agency is the Connecticut Board of Mediation and Arbitration, an agency of the Connecticut Department of Labor. (Conn. Gen. Stat. §§ 4-9a, 31-91)

25. Agree.

26. Agree that the suits were filed on the dates which are a part of this court's records. Disagree with any implication that pursuing a grievance under a collective bargaining agreement is in any way a prerequisite to federal civil rights litigation.

27. Agree.

28. Agree.

29. Agree.

30. Agree.

31. Agree.

32. Agree.

33. Disagree. (McElroy deposition transcript, pp. 74-75, 93-94)

34. Disagree. (Ibid.)

35. Disagree. (Id., pp. 21-22)

36. Agree.

37. Agree that the Board afforded McElroy no opportunity to be heard. Agree that McEory received a letter from defendant Field and spoke with defendant Field after being denied promotion. Otherwise, disagree. These are not "admissions" and the latter has nothing to do with the former.

38. Agree that a grievance was filed, with union support. This is not an "admission".

39. Agree.

40. Agree.

41. Agree that the Connecticut Board of Mediation and Arbitration has been conducting hearings on the plaintiff's grievance and that of McElroy. This, however, is not an "admission".

42. Agree.

43. Agree.

44. Agree.

45. See answer to Claims 33 and 34.

46. Agree that the Board makes promotions. This is not an admission. The statement, however, is redundant and repetitious.

47. Disagree. See answer to Claim 35.

48. Disagree. (McElroy deposition transcript, pp. 74-75, 94-95)

49. Hayes and McElroy are the two victims of the constitutional violations perpetrated by the defendants. They were victimized by the same defendants, in the

4

same way, at the same time. To that extent, agree. Otherwise, this claim is redundant and repetitious.

50. Agree that the two complaints are very similar, since the two plaintiffs were victimized by the same defendants, in the same manner, and at the same time. This is hardly an admission; it is a statement of fact.

51. Agree.

52. Disagree. (Hayes Interrogatory Answers, ¶ 19; Hayes deposition transcript, pp. 49-52, 76-78, 133-34, 136-37; McElroy deposition transcript, pp. 21-22, 32-33, 96-97; Avallone deposition transcript, pp. 6-8)

53. Objection; irrelevant. It is no part of the constitutional claims in this case that rumor was elevated above fact.

54. Agree, but irrelevant.

55. Agree.

56. Disagree. (McElroy deposition transcript, pp. 21-22)

57. Agree that the Board must vote for a promotion to take place.

58. Disagree. (Hayes Interrogatory Answers, ¶ 13; Hayes deposition transcript, pp. 64-65; Memo from Field to Hayes dated 12/10/01, with attachments; McElroy deposition transcript, pp. 74-75, 94-95)

59. Agree. He had no right or power to object.

60. Agree.

61. Agree.

62. Disagree. (McElroy deposition transcript, pp. 21-22)

63. Disagree. (Hayes Interrogatory Answers, ¶ 13; Hayes deposition transcript, pp. 64-65; Memo from Field to Hayes dated 12/10/01, with attachments; McElroy deposition transcript, pp. 74-75, 94-95)

64. Disagree. (Ibid.)

65. Agree that a letter was written. Otherwise, disagree. (Hayes deposition transcript, p. 109; Hayes Interrogatory Answers, ¶¶ 16, 17)

66. Objection. Argumentative and not a true statement of fact.

67. Disagree. (Haye's deposition transcript, p. 109; Hayes Interrogatory Answers, ¶¶ 16, 17)

68. Agree.

69. Agree.

70. Agree.

71. Agree.

72. Object to the word "admits" and move to strike it. Otherwise, agree.

73. Agree.

74. Object to the word "admits" and move to strike it. Otherwise, agree.

75. Objection. This is a legal argument and not a statement of fact. The complaints both are on file with this court and speak for themselves.

76. Agree.

77. Agree.

78. Agree.

79. Agree.

80. Agree.

81. Agree.

82. Agree.

83. Agree.

84. Disagree. (McElroy deposition transcript, pp. 21-22, 32-33, 96-97)

85. Disagree. (Ibid.)

86. Agree.

87. Disagree. (McElroy deposition transcript, pp. 21-22)

88. Agree.

89. Agree.

90. Agree that he made that statement, ludicrous on its face.

91. Disagree. (McElroy deposition transcript, pp. 21-22, 32-33, 96-97)

92. Disagree. (Hayes Interrogatory Answers, ¶¶ 13, 14; Hayes deposition testimony, pp. 128-30)

93. Agree.

94. Disagree. (McElroy deposition transcript, pp. 74-75, 93-94)

95. Disagree. (Ibid.)

96. Disagree. (Ibid.)

97. Disagree. (Ibid.)

**B.   PLAINTIFF'S STATEMENT OF FACTS:**

1. Kevin Hayes has sworn to the truth of all his interrogatory answers. (Hayes Deposition Transcript, pp. 14-17)

2. For more than fifteen years prior to July 11, 2001, it was the policy of the defendants to promote the otherwise qualified applicable for promotion who received the highest score on the promotional examination. (Hayes Interrogatory Answers, ¶ 13; Defendant Field's testimony before Connecticut Board of Mediation and Arbitration, March 19, 2002, pp. 21-22, 96-97; Sworn testimony of plaintiff before State Board of Mediation and Arbitration, November 4, 2003, p. 266)

3. For a long period of time up to the point at which the defendants denied him promotion to the position, Kevin Hayes held the rank of Acting Captain. (Hayes Interrogatory Answers, ¶ 14; Hayes deposition testimony, pp. 128-30)

4. Prior to the formal meeting of the Board, the defendants decided among themselves that the two highest-scoring candidates on the Captain's exam would not be promoted. They did this knowing that never before in the history of the Torrington Fire Department had the highest-scoring candidates been denied promotion. Defendant Giampaolo had checked with his closest friend prior to the Board's formal meeting to attempt -- without success, it turned out -- to find even a single instance in the past in which the highest-scoring candidates had not been promoted. Defendant Giampaolo had a personal interest in seeing candidate Smith receive the promotion because of a past relationship with him. (Hayes Interrogatory Answers, ¶ 19)

8

5. Defendant Giampaolo had taken the same promotional exam as the plaintiff. He was the Acting Deputy Chief at the time. He scored lower than the plaintiff. He attended the executive session of the Board of Safety, with defendant Field, to assist in making the decision about whom to promote to the rank of Captain although it is contrary to the Board's usual procedures to do so. (Hayes deposition transcript, pp. 27, 36, 90; Plaintiff's deposition transcript, pp. 39-40; Sworn testimony of plaintiff before State Board of Mediation and Arbitration, November 4, 2003, pp. 268-69)

6. Defendant Zordan, in sworn testimony before the Connecticut Board of Mediation and Arbitration, testified that he doubted the fairness of the procedure by which the plaintiff was denied promotion to Captain. (Hayes deposition transcript, pp. 49-51)

7. Defendant Giampaolo, in sworn testimony before the Connecticut Board of Mediation and Arbitration, admitted that he was informally lobbying the other defendants to promote Smith and Starr rather than the two top-scoring applicants. (Id. p. 52)

8. The official minutes of the meetings Torrington Board of Public Safety for all the years available demonstrate that, until this case, the defendants always had promoted the highest-scoring applicants and had never varied from that practice. (Id. pp. 64-65; Memo from Field to Hayes dated 12/10/01, with attachments; plaintiff's deposition transcript, pp. 74-75, 94-95)

9. Defendant Giampaolo has admitted in his sworn testimony, given in the presence of the plaintiff, that he met secretly on multiple occasions with defendants who were Commissioners, for the purpose of discussing who would be promoted to the rank of Captain. (Hayes deposition transcript, pp. 76-78)

10. The defendants, despite the plaintiff's request, have never submitted even a colorable reason for their refusal to promote him. They claimed that he did not fit their "profile" but upon request refused to tell him what that "profile" was. (Id. p. 109; Hayes Interrogatory Answers, ¶¶ 16, 17)

11. Defendant Potter, who was an informal leader of the Board, met secretly with defendant Giampaolo on several occasions prior to the Board's official vote, to determine who would receive the promotions. (Hayes deposition testimony, pp. 133-34)

12. Defendant Telman, in addition to being a member of the Board of Public Safety, sells cleaning equipment to the Fire Department. In the course of his business dealings with defendant Giampaolo, he and Giampaolo discussed in advance of the Board's formal meeting who would be promoted to the rank of Captain. (Id. pp. 136-37)

13. For at least fifteen years prior to the refusal to promote the plaintiff, the Chief and Deputy Chief have consulted with the Board of Public Safety in jointly deciding who would be promoted. (Plaintiff's deposition transcript, pp. 21-22)

14. The defendants, as a result of secret meetings, knew two weeks before the formal Board meeting that they were going to deny promotion to the plaintiff. (Id. pp. 32-33)

15. When the plaintiff, who was the highest-scoring person on the promotion exam, asked defendant Field why he had been denied promotion contrary to the unvarying past practice, defendant Field was unable to give a reason. (Id. p. 44)

16. Without exception, until this case, the unvarying practice of the Torrington Fire Department has been that the highest-scoring applicants always receive the promotions for which they have tested. (Id. pp. 74-75, 93-94; Avallone deposition transcript, pp. 5-6)

17. The denial of promotion to the plaintiff, contrary to past practice, was the result of secret meetings participated in by at least defendants Field, Giampaolo, Potter and Telman. (Plaintiff's deposition transcript, pp. 96-97)

18. Defendant Giampaolo specifically stated to a retired firefighter, prior to the date that the Board of Public Safety held its formal meeting to vote on promotions, that the plaintiff would not be promoted despite the fact that, according to past practice, he was supposed to be promoted. (Avallone deposition transcript, pp. 6-8)

19. Defendant Field prepared a portfolio for each of the four Lieutenants eligible for promotion to captain, including in each such portfolio the materials he decided to include, and excluding what he chose to exclude, and submitted those portfolios to the

Board. (Testimony of defendant Field before Board of Mediation and Arbitration, March 19, 2002, pp. 59-61)

20. In the case of Hayes, Field excluded from the portfolio all the commendation letters contained in the plaintiff's personnel file. (Id. p. 61)

21. Defendant Field claims that the Board of Public Safety asked him to recommend the plaintiff for promotion and that he refused to do so. (Id. p. 83)

22. Defendant Potter claims that the reason he voted not to promote McElroy or Hayes was because he had heard that both of them were "pussy whipped...." (Sworn testimony of defendant Potter before State Board of Mediation and Arbitration, June 3, 2003, pp. 40, 43)

23. The decision of the Board of Public Safety not to promote Hayes and McElroy was based primarily on the comments made to the Board by the defendants Field and Giampaolo. (Sworn testimony of defendant Zordan before State Board of Mediation and Arbitration, June 3, 2003, pp. 97, 105-06, 108-09)

24. Defendant Zordan believes that the decision not to promote McElroy and Hayes "was politics...that we made this decision not knowing the people." (Id. p. 104)

25. Test results were ignored by the Board in making the promotion decision. (Id. p. 109)

26. Defendant Giampaolo had private discussions concerning the promotions, prior to the Board's meeting, with defendants Potter and Telman. In those discussions, he recommended that Hayes and McElroy not be promoted. (Sworn testimony of

defendant Giampaolo at the Connecticut Board of Mediation and Arbitration, June 27, 2003, pp. 192-95)

27. The information furnished the Board by defendant Field concerning McElroy and Hayes was inaccurate and incomplete and did not fairly portray their achievements and qualifications for promotion. (Sworn testimony of Joseph McElroy before State Board of Mediation and Arbitration, November 4, 2003, pp. 254-55; Sworn testimony of Kevin Hayes before State Board of Mediation and Arbitration, November 4, 2003, pp. 302-03)

28. When Joseph McElroy asked defendant Field why he had not been promoted, Fields's response was: "I can't tell you." (Sworn testimony of Joseph McElroy before State Board of Mediation and Arbitration, November 4, 2003, p. 265)

29. McElroy had been acting Captain for three years before being passed over for promotion to that rank. (Id. p. 267)

30. The rankings on the Captain's exam are based not only on test scores but on many factors, including seniority within the department. (Id. p. 272)

THE PLAINTIFF

BY: *[signature]*
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: jrw@johnrwilliams.com
His Attorney

## CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Albert G. Vasko, Esq., 140 Main Street, Torrington, CT 06790; Attorneys Jack G. Steigelfest and Constance L. Epstein of Howard, Kohn, Sprague & FitzGerald, 237 Buckingham Street, Hartford, CT 06106; and John J. Radshaw, III, Esq., Howd & Ludorf, 65 Wethersfield Avenue, Hartford, CT 06116.

*[signature]*
JOHN R. WILLIAMS