UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAR 16  P 4: 09

U.S. DISTRICT COURT
HARTFORD, CT.

JOSEPH McELROY,
   Plaintiff,

VS.

CITY OF TORRINGTON, JAMES
POTTER, CAROLANN KENNEDY,
THOMAS TELMAN, ROBERT
ZORDAN, KENNETH FUCHSMAN,
CHRISTOPHER JANCO, JAYE
GIAMPAOLO, and JOHN B. FIELD JR.,
   Defendants.

Civil No. 3:02cv 1525 (AVC)

### RULING ON THE DEFENDANTS, JAYE GIAMPAOLO AND JOHN FIELD'S MOTION FOR SUMMARY JUDGMENT

This is an action for damages and injunctive relief arising out of the alleged violation of Joseph McElroy's due process and equal protection rights incident to his employment, as secured to him by the Constitution of the United States and the Constitution of the state of Connecticut. It is brought pursuant to 42 U.S.C. § 1983.

The defendants, Jaye Giampaolo and John B. Field, have filed the within motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

The issues presented are: (1) whether McElroy has demonstrated that he had a protected property interest so as to warrant the protection of the due process clause of the Fourteenth Amendment; (2) whether McElroy has demonstrated that Field and Giampaolo violated his right to the equal protection of the laws under the Fourteenth Amendment; and (3) whether Field and

Giampaolo are protected from personal liability pursuant to the doctrine of qualified immunity.

For the reasons that hereinafter follow, the motion for summary judgment is GRANTED.

## FACTS

Examination of the complaint, affidavits, declarations, pleadings, local Rule 56 statements and exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed, material facts. The city of Torrington has a fire department which is supervised by the board of public safety. The members of the board of public safety, James Potter, Carolann Kennedy, Thomas Tellman, Robert Zordan, Kenneth Fuchsman, and Christopher Janco, are all named defendants in this action. At all relevant times the fire department has been commanded by the defendant, chief John B. Field Jr. who has held that title since April of 2001. Field's responsibilities include overall management and operation of the fire protection, inspection, prevention, and training services. He reports to the board of public safety. The defendant deputy chief Jaye Giampaolo assists Field and has held that title since May of 2002. Giampaolo is responsible for the overall operations of the department, including training, facilities, equipment, and materials necessary for the firefighters to complete their mission. He reports to the chief of the department.

In early 2001, two vacancies opened for the position of captain in the department. Pursuant to the procedures mandated in the governing collective bargaining agreement, the department posted notices of the vacancies and administered written tests to the individuals who were eligible to take the exam. Among the individuals eligible to take the test were lieutenants Giampaolo, Hayes, and the plaintiff, McElroy. These same individuals, among others, also took the oral examination. Also pursuant to the collective bargaining agreement, the department calculated and posted the scores. The plaintiff had the highest score, followed by lieutenants

Hayes, Smith, and Starr. According to the collective bargaining agreement, any two of the four top scoring candidates were eligible for the position of Captain.

The collective bargaining agreement is an agreement between Local 1567 A.I.F.F.-A.F.L.-C.I.O. and the city of Torrington. The agreement governs the relationship between the city of Torrington and the firefighters who are members of the bargaining unit. Both McElroy and Hayes are members of Local 1567, the union for the city of Torrington, and are familiar with the agreement. The relevant portion of the agreement, Article XXIX, entitled Appointments and Promotions states in Section 1 that: "[a]ll promotions and appointments to the Department shall be made by the Board of Public Safety." The agreement then stipulates the procedures for posting the positions, examinations, and calculations of final scores, as discussed above. Section 1e of this Article mandates that: "[t]he top four (4) applicants' names shall be submitted to the Board of Public Safety in order of their scores and said Board of Public Safety shall select any one (1) of said candidates and appoint to the position forthwith."

On July 11, 2001, the board of public safety, the sole authority vested to promote or appoint any person to any rank or position, held a meeting and decided to promote lieutenants Smith and Starr to the vacant position of captain. Field and Giampaolo were present during this meeting, both at the public and executive sessions. At this meeting, the top four names were presented to the board in the order of their scores, but the actual scores were not presented. The board also received a portfolio of each candidate, comprised of a photograph and a one page summary of the candidate's qualifications and experience. At this meeting, both Field and Giampaolo answered questions posed by members of the Board about the candidates. Immediately following the meeting, Field told McElroy that he could not have recommended him because the knowledge of their friendship would create the appearance of impropriety.

3

On July 12, 2001, following this decision, Field sent a letter to McElroy. The letter officially notified McElroy of the board's actions on July 11, 2001, explained there were only two positions available, and that the decision was difficult. The letter also stated that McElroy was welcome to stop by Field's office at any time to discuss the matter. Lieutenant Hayes received the same letter. Both Hayes and McElroy, with their union representative present, met separately with Field. At these meetings, Field never stated the Board's reasons for its decision to promote Smith and Starr over Hayes and McElroy. Both Hayes and McElroy then filed grievances supported by their union, which Field denied.

After the grievance denial, McElroy and Hayes, and their union, sought to arbitrate the matter before the Connecticut Board of Mediation and Arbitration, an agency of the Connecticut Department of Labor. As of November 12, 2003, the grievances are still pending before this entity. Thirteen months after the Board's decision to promote Smith and Starr, both McElroy and Hayes filed lawsuits in the United States District Court for the District of Connecticut. Both lawsuits named the same defendants, made the same factual allegations, and advanced the same legal theories. The two complaints are virtually identical, with the exception that Hayes scored second highest, and McElroy scored the highest. Both Hayes and McElroy are aware of each other's lawsuits, and share the same attorney.

It is not in dispute that the exclusive power to promote and appoint any member of the city of Torrington's fire department is vested in the board of public safety by virtue of Article

XXIX of the governing collective bargaining agreement and the charter of the city of Torrington. Furthermore, neither Field nor Giampaolo ever promised McElroy that he would be promoted.

## STANDARD

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffacci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 112 S. Ct. 152 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, supra, at 247-48 (emphasis original). The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex v. Catrett, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

## **DISCUSSION**

I. <u>Due Process Claim</u>

Field and Giampaolo first argue that "[b]ased on the undisputed material facts, plaintiff's procedural due process claim fails to state a claim upon which relief may be granted as a matter of law." Specifically, Field and Giampaolo argue that "McElroy has no property interest in the promotion" and "despite having the highest score on the exam, the presence of discretion on the part of the board of public safety in the choice of which individual to promote vitiates [McElroy's] due process claims."

McElroy, while not responding to this issue by way of brief, argues in his complaint that: "[b]ased upon his score, his other qualifications and the unvarying past and standard practice of the Torrington Fire Department, the City of Torrington and the Torrington Board of Public Safety, [he] had a property interest in his promotion to the rank of Captain in the Torrington Fire Department."

The United States Supreme Court articulated the standard for the creation of a property interest under the due process clause in <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564 (1972). The court stated that:

> To have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

<u>Id</u>. at 577. In order to determine which interests are afforded constitutional protection "a court must look to whether the interest involved would be protected under state law and must weigh

6

'the importance to the holder of the right.'" Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 783 (2d Cir. 1991) (quoting Brown v. Brienen, 772 F.2d 360, 364 (7th Cir. 1983)). While mutually explicit understanding *can* rise to the level of a property interest, the second circuit has explicitly stated that "[m]utually explicit understandings, however, do not 'create a property interest for purpose of due process when they are contrary to the express provisions of regulations and statutes.'" Chu v. Schweiker, 690 F.2d 330, 334 (2d Cir. 1982) (quoting Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980)).

The seminal second circuit case dealing with property interests with respect to promotions is McMenemy v. City of Rochester, 241 F.3d 279 (2d Cir. 2001). In this case, the chief of the Rochester fire department promised the plaintiff that he would promote him to the rank of captain, but never fulfilled the promise. Id. at 281. The chief granted the promotion to a person who ranked lower than the plaintiff. Id. at 282. The applicable statute, Civil Service Law § 61, granted the City broad discretion in matters of promotion. Id. at 286. Given these circumstances, the court concluded that the plaintiff did not have a property interest in the promotion. More specifically, the court stated "any alleged promise of promotion made by Chief Ippolito . . . did not strip the Chief of his discretion to choose another candidate once a position did become available." Id. at 286. Therefore, even if Field had expressly promised McMenemy the promotion, "the City's broad discretion in matters of promotion, granted by statute, prevent that promise from ripening into an entitlement. Id.

Similarly factual cases in other circuits have also held that no property interest exists in these circumstances. For example, in Burns v. Sullivan, 619 F.2d 99, 104 (1st Cir. 1980) (cert. denied, 449 U.S. 893 (1980)), the plaintiff took a written examination for promotion to sergeant and scored ninth, but the defendants exercised the option provided by state law to consider the

results of the oral examination and other factors in denying plaintiff the promotion. Thus, because of the qualified nature of the plaintiff's expectation in the promotion the court held that the plaintiff's interest in the promotion based solely on the written examination score "did not rise to the level of a property interest entitled to constitutional protection." Burns v. Sullivan, 619 F.2d 99, 104 (1st Cir. 1980). Similarly, the Eight Circuit in Meyer v. City of Joplin, 281 F.3d 759, 761 (2002), held that the plaintiff's "unilateral expectation of being promoted because of his success on the competitive examination and his rank as one of the top three candidates" did not rise to the level of a constitutionally protected property interest. These unilateral interests did not rise to the requisite level because they were "substantially diminished by the police chief's ability under the City Charter and Personnel Rules to consider the candidates more subjective qualifications in addition to the competitive examination score. Id. 761-762. Similar results can be found in the Seventh and Ninth Circuits. See Nunez v. City of Los Angeles, 147 F.3d 867, 872-873 (9th Cir. 1998) (concluding that police officers expectations of promotions did not rise to the level of entitlements); Bigby v. City of Chicago, 766 F.2d 1053, 1056 (7th Cir. 1985) (*cert. denied*, 474 U.S. 1056 (1986) (holding that "the statute and ordinance created an expectation that the examinations used for promotion in the civil service will be fair but . . .not so firm and definite an expectation as to be 'property' in a constitutional sense.").

Given the relevant case law, McElroy did not possess a property interest in his promotion based solely on his test score, past practice, and his other qualifications. Similar to McMenemy, which had a statute that governed promotions, the collective bargaining agreement also governs promotions and appointments. Article XXIX, Section 1e explicitly grants the board of public safety broad discretion when it states "[t]he top four (4) applicants' names shall be submitted to the Board of Public Safety in order of their scores and said Board of Public Safety shall select

*any* one (1) of said candidates and appoint to the position forthwith." (emphasis added). Thus the board can grant the promotion to *any* of the top scoring candidates, and there is nothing in the agreement which mandates that the promotion be given in the *order* which the scores were received.

Furthermore, McElroy's assertion that he had a property interest because the past practice of the department was to promote the top scoring candidate is also without merit. It is true that a "mutually explicit understanding" *may* create a "claim of entitlement" protected under the Fourteenth Amendment. See Perry v. Sinderman, 408 U.S. 593, 601 (1972). However, as the case law indicates, "mutually explicit understandings . . . do not 'create a property interest for the purpose of due process when they are contrary to the express provisions of the regulations and statutes.'" Chu v. Schweiker, 690 F.2d 330, 334 (2d Cir. 1982) (quoting Baden v. Koch, 638 F.2d 486, 492 (2d Cir. 1980)). Even assuming, arguendo, that the undisputed past practice was to promote the top scoring candidate, it would be irrelevant, since the collective bargaining agreement clearly grants the board of public safety the authority to promote *any* of the top four scoring candidates, regardless of scores.

II. Equal Protection Claim

Field and Giampaolo next argue that "[b]ased upon the undisputed material facts, [the] plaintiff's equal protection claim fails to state a claim upon which relief may be granted as a matter of law." Specifically, Field and Giampaolo argue that McElroy cannot maintain an equal protection 'class of one' claim . . . [because] "the undisputed evidence demonstrates that McElroy was treated just like all other similarly situated persons."

McElroy responds that "[v]iewed against clearly established law, and crediting the plaintiff's evidence and the reasonable inferences which can be drawn therefrom, it is obvious

9

that there is enough in this case to warrant a verdict against the defendants." Specifically, McElroy argues that "[t]he evidence supports the claim that the defendants intentionally treated the plaintiff and Hayes differently from every other top-scoring candidate for promotion in the recorded history of the Torrington fire department . . . "

The United States Supreme Court has repeatedly held that "[t]he Equal Protection Clause requires that the government treat all similarly situated people alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The Second Circuit has further explained that standard by stating that:

> [a]lthough the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.

Harlen Associates v. Inc. Village of Mineola, 273 F.3d 494, 499 (2001).

The United States Supreme Court articulated the standard for this "class of one" equal protection claim in Village of Willowbrook v. Olech, 528 U.S. 562 (2000). In this case the plaintiff sued the Village after it required her to grant a 33-foot easement in order to connect to the Village's water supply, while requiring the rest of the property owners to grant only a 15-foot easement. Id. at 563. The United States Supreme court stated that "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564. The court affirmed the lower court's judgment denying the defendant's 12 (b) (6) motion, and held that:

> Olech's complaint can fairly be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connection

> her property to the municipal water supply where the Village required only a 14-foot easement from other similarly situated property owners. The complaint also alleged that the Village's demand was 'irrational and wholly arbitrary' and that the Village ultimately connection her property after receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis.

Id. at 565.

The second circuit has explored in more detail the issue of whether the plaintiff was "treated differently from others similarly situated." Id. at 564. In Shumway v. United Parcel Service, Inc, 118 F.3d 60, 64 (2d Cir. 1997), the court stated that "to be similarly situated, the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." citing Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992) To satisfy this standard, the circumstances need not be identical, but there must be a "reasonably close resemblance of the facts and circumstances of the plaintiff's and comparator's cases." Graham v. Long Island Railroad, 230 F.3d 34, 40 (2d Cir. 2000).

Given the standard set out by the Supreme Court and the second circuit, McElroy's "class of one" equal protection claim fails. Regardless of whether Field and Giampaolo intentionally treated McElroy differently, McElroy's claim fails because he is not a "class of one." It is undisputed that the other individual who did not receive the promotion, Kevin Hayes, has also filed a lawsuit against the same defendants. Examination of the two complaints reveals that they are identical in all respects, except that Hayes scored second highest on the promotional examination, while McElroy scored the highest. Therefore, while McElroy and Hayes are not identical because of their different test scores, the fact that they both took the same test, both were passed over for promotion, and both hold the same position as lieutenant demonstrates a "reasonably close resemblance of the facts and circumstances." Graham, 230 F.3d at 40.

Given that McElroy and Hayes are similarly situated and neither of them received the promotion it cannot be successfully argued that McElroy was treated differently from other similarly situated persons. The undisputed existence of Hayes' lawsuit negates any possibility of McElroy arguing that he is a "class of one" for equal protection purposes.

Since the "class of one" argument fails, McElroy must demonstrate that he is a member of a protected or vulnerable class. There are no facts to indicate that McElroy is a member of a protected class. Rather, McElroy has not even alleged that he is a member of a protected class thus warranting the protection of the equal protection clause.

Thus, because McElroy is not a "class of one" nor a member of a protected class, the motion for summary judgment is GRANTED.[1]

## CONCLUSION

For the foregoing reasons, Field and Giampaolo's motion for summary judgment is GRANTED (document no. 38).

It is so ordered this 16th day of March, 2004 at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Court Judge

---

[1] Because the court has found no genuine issue of material fact to demonstrate a violation of due process or equal protection, the court does not address the defendants' final argument that they are entitled to the defense of qualified immunity.